1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSE LUIS RIVERA-MALDONADO,** <br><br> Petitioner, <br><br> v. <br><br> **UNITED STATES OF AMERICA,** <br><br> Respondent. <br> ————————————————— | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

CV-F-06-1410 AWI
CR-F-03-5434 AWI

**ORDER RE MOTION TO VACATE, SET ASIDE, OR CORRECT THE SENTENCE PURSUANT TO 28 U.S.C. §2255**

**CR-F-03-1410**
**Docs. 99, 106, and 109**

## I. History

On October 22, 2003, Petitioner and co-defendant Jose Luis Alvarez made contact with John DeLuca, an undercover officer of the Fresno Police Department, to discuss the purchase of pseudoephedrine pills for the production of methamphetamine. Over the phone, Alvarez agreed to buy six buckets of pseudoephedrine (approximately 67 pounds) for $75,000 with an option of buying more, setting up a meeting at Klein's Truck Stop in Fresno. When Officer DeLuca arrived, Petitioner and Alvarez were in a Ford truck with Alvarez in the driver's seat and Petitioner in the passenger side seat. Mr. Alvarez handed over a large sum of money to Officer DeLuca; Petitioner and Alvarez then started to transfer the buckets from Officer DeLuca's vehicle to the Ford truck. At that point, Petitioner and Alvarez were arrested. Upon searching the Ford truck, Fresno Police Department Officer Dennis Lowry found a gun and ammunition in

1

1  a partially opened nylon case on the passenger side floor.

2       Petitioner was initially indicted on two counts: conspiracy to aid and abet the manufacture

3  of methamphetamine and attempted possession of pseudoephedrine. Doc. 1.[1]  The operative

4  superseding indictment charged four counts: (1) conspiracy to aid and abet the manufacture of 50

5  grams or more of methamphetamine in violation of 21 U.S.C. §841(a)(1), 841(b)(1)(A),

6  841(c)(2), and 21 U.S.C. §846; (2) attempted possession of pseudoephedrine in violation of 21

7  U.S.C. §841(c)(2) and 21 U.S.C. §846; (3) possession of a firearm in furtherance of a drug

8  trafficking offense in violation of 18 U.S.C. §924(c)(1)(A)(I); and (4) illegal entry into the United

9  States in violation of 8 U.S.C. §1325(a)(1). Doc. 54.  Petitioner plead guilty to count one on

10  February 6, 2006.  The parties then lodged a previously signed plea agreement ("Agreement")

11  with the court. Doc. 85.  Petitioner agreed to plead guilty to count one of the superseding

12  indictment as well as admit the presence of the gun and ammunition on the passenger side of the

13  truck while reserving the right to argue for application of the safety valve provision.  The

14  government agreed to dismiss the three other counts and to recommend a minor role and

15  acceptance of responsibility reductions while reserving the right to argue against the safety valve

16  (which would allow the Petitioner to be sentenced in accord with the sentencing guidelines even

17  if it recommended a sentence below the statutory minimum).  The U.S. Probation Office

18  prepared a draft presentence investigation report; both parties filed briefs regarding sentencing.

19  Docs. 88 and 89.  The court held a hearing on July 17, 2006 at which Officers Lowry and DeLuca

20  testified.  After the testimony, the court sentenced Petitioner to the statutory minimum of 120

21  months imprisonment and 60 months supervised release. Doc. 90.  Specifically, the court applied

22  a gun enhancement pursuant to United States Sentencing Guidelines ("USSG") §2D1.1(b)(1),

23  applied a minor role reduction pursuant to USSG §3B1.2(b), applied an acceptance of

24  responsibility reduction pursuant to USSG §3E1.1, and denied application of the safety valve

25  pursuant to USSG §5C1.2(a)(2).  That calculation lead to a criminal history category of I and a

26  total offense level of 27 which would have lead to a sentence of 70-87 months imprisonment but

27  ────────────────

28       [1]All citations to docket entries refer to filings in the criminal case (03-5434).

2

1    for the mandatory minimum of 120 months specified by 21 U.S.C. §841(b)(1)(A).

2         Judgment was issued August 3, 2006. Doc. 91.  Petitioner filed a timely notice of appeal

3    on August 14, 2006. Doc. 92.  Petitioner then filed his first 28 U.S.C. §2255 habeas petition with

4    this court on October 13, 2006, while his appeal to the Ninth Circuit was still pending. Doc. 99.

5    Petitioner then filed an amended habeas petition with an additional ground for relief on February

6    15, 2007. Doc. 106.  The Ninth Circuit then granted Petitioners motion to voluntarily dismiss his

7    appeal on April 26, 2007. Doc. 108.  No substantive briefing or a statement of issues on appeal

8    were ever filed in the dismissed appeal.  On October 9, 2007, Petitioner filed a motion in this

9    court to ask when his previously filed habeas petitions would be addressed. Doc. 109.

10

11                                    **II. Legal Standards**

12         Title 28 U.S.C. §2255 provides, in pertinent part: "A prisoner in custody under sentence

13    of a court established by Act of Congress claiming the right to be released upon the ground that

14    the sentence was imposed in violation of the Constitution or laws of the United States ... may

15    move the court which imposed the sentence to vacate, set aside or correct the sentence."  Habeas

16    relief is available to correct errors of jurisdiction and constitutional error but a general "error of

17    law does not provide a basis for collateral attack unless the claimed error constituted a

18    fundamental defect which inherently results in a complete miscarriage of justice." United States

19    v. Addonizio, 442 U.S. 178, 185 (1979).

20         Courts must "construe pro se habeas filing liberally." Laws v. Lamarque, 351 F.3d 919,

21    924 (9th Cir. 2003).  Under Section 2255, "a district court must grant a hearing to determine the

22    validity of a petition brought under that section, '[u]nless the motions and the files and records of

23    the case conclusively show that the prisoner is entitled to no relief.'" United States v. Blaylock,

24    20 F.3d 1458, 1465 (9th Cir.1994), quoting 28 U.S.C. §2255.  The court may deny a hearing if

25    the petitioner's allegations, viewed against the record, fail to state a claim for relief or "are so

26    palpably incredible or patently frivolous as to warrant summary dismissal." United States v.

27    McMullen, 98 F.3d 1155, 1159 (9th Cir.1996), citations omitted.  Mere conclusory statements in

28    a Section 2255 motion are insufficient to require a hearing. United States v. Hearst, 638 F.2d

1   1190, 1194 (9th Cir.1980).

2

3   **III. Discussion**

4   Petitioner filed two habeas petitions while his appeal to the Ninth Circuit was pending.

5   "Generally, the noting of such an appeal severely restricts the filing of a collateral claim with the

6   District Court, to avoid any anomaly associated with the simultaneous consideration of the same

7   case by two courts. The usual practice is to make a collateral assertion of error subsequent to the

8   date of decision in the direct appeal. When this path is followed the risk of duplicitous and

9   conflicting judicial administration is minimized, inasmuch as the disposition of the direct appeal

10  may render the motion moot." United States v. Taylor, 648 F.2d 565, 572 (9th Cir. 1981).  Since

11  Petitioner has voluntarily dismissed his appeal, addressing Petitioner's habeas claims in both

12  petitions appears to be procedurally proper at this point.

13

14  **A. Plea Agreement**

15  Petitioner's claim in the first petition is that the government failed to fulfill its end of the

16  Agreement:

17      When my attorney told me about the plea bargain/agreement that the U.S. Attorney was
        offering. He said that the U.S. Attorney had told him she would not argue that I was a
18      leader or organizer. Further, she agreed I had a minor role and was just delivering the
        money. Additionally Mr. Richardson said that the U.S. Attorney had told him about
19      another case US v Gabriel Marquez, 1:02-cr-05086-AWI-2, that was before District
        Judge Ishii. In that case the court with almost identical facts found that the defendant was
20      just a delivery person and gave him only 63 months in custody. The U.S. Attorney told
        Mr. Richardson and he told me the same thing would happen in my case as a worst case
21      scenario. This case was put in the plea agreement the U.S. Attorney agreed not to argue I
        was the money man or the leader or any of those things, that is exactly what she did. Her
22      agreement was just to argue about the gun and nothing else she did not follow that
        agreement. I was sentenced difference because she said I was the money man and said I
23      was connected to the cell phone and connected to the truck and the residence and much,
        much more. This was wrong and she did not give me or my attorney any notice and she
24      took us by surprise when she did this. The U.S. Attorney did not follow the agreement.

25  Doc. 99, First Petition, at 1 and 7.  Both parties to the Agreement are bound by its terms. United

26  States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002).  The signed agreement states:

27      The defendant reserves the right to argue in support of applicability of the safety valve
        provision, which, requires, among other tings, that a firearm not be possessed during the
28      transaction....The government agrees to recommend a minor role reduction to promote

                                                    **4**

1

uniform application of the law; specifically, such reduction would be consistent with this

2

Court's application of a minor role reduction in the matter of <u>United States v. Gabriel</u>
<u>Marquez</u>, CR. F. No. 02-5086 AWI, whose ostensible role in the pseudoephedrine

3

transaction consisted solely of delivering cash for the purchase of pseudoephedrine. The
government reserves the right to argue against application of the safety valve provision.

4

Doc. 85, Agreement, at 4:24-27 and 5:11-19.  At the sentencing hearing, the government said:

5

every indication that [Petitioner] is the individual who drove the truck here to Fresno.

6

Alvarez has no ties, no ostensible ties that this detective was able to discern to the owner
of the vehicle. Because the defendant is - he possessed the firearm, a two-level

7

enhancement applies pursuant to the guidelines, and because he - a firearm was involved,
he is not entitled to safety valve relief or to a safety valve interview. The Government

8

would ask the Court to apply the two-level enhancement for the firearm. We did agree to
a minor role, which I believe is a significant benefit, and that is based on the Court's past

9

application of a minor role reduction for a money man in a pseudoephedrine pill case. So
he has gained a two level - basically a wash, actually, applying the two-level enhancement

10

for the firearm, reducing it for the minor role. We do not believe he's entitled to safety
valve because of the firearm. And I think we have established that by a preponderance of
the evidence.

11

12

Doc. 102, Sentencing Transcript, at 53:10-54:3.

13

Thus, the government did in fact fulfill its end of the plea agreement.  At sentencing, the

14

government argued for a two-level minor role reduction while pushing for a two-level gun

15

enhancement.[2]  Petitioner objects to his characterization as a "money man" but that is the same

16

description applied to the defendant in U.S. v. Gabriel Marquez.  Petitioner claims the

17

government promised him a sentence of 63 months or less.  Yet, the Agreement was explicit that

18

"the sentencing court is neither a party to nor bound by this agreement and the sentencing judge

19

is free to impose the maximum penalties as set forth in paragraph 7." Doc. 85, Agreement, at

20

11:12-15.  The relevant section states "The following is the maximum potential sentence which

21

the defendant faces for his conviction as to count one of the Superseding indictment:...Mandatory

22

minimum: Ten (10) years. Maximum: Life." Doc. 85, Agreement, at 8:22-28.  The government

23

also specified that it opposed the safety valve provision, the application of which would be

24

25

26

[2]Technically, the government only reserved the right to argue against the safety valve
provision.  However, Petitioner's equivalent reservation of rights notes that application of the

27

safety valve provision hinged on the question of firearm possession.  While the plea agreement is
not entirely clear on this point, it is readily inferred that the government's reservation of rights as

28

including the issue of firearm possession.

1  necessary for a sentence below the statutory minimum of 120 months. Doc. 85, Agreement, at

2  5:18-19.

3          At his change of plea hearing on February 6, 2006 (at which Petitioner was assisted by a

4  Spanish language interpreter), the court ascertained that Petitioner did in fact understand that the

5  government was not promising him a set sentence:

| | |
|---|---|
| Court: | Does this plea agreement represent everything, as far as your understanding, of the agreement that you have reached with the government regarding your case" |
| Defendant: | Yes. |
| Court: | Do you understand all the terms of the plea agreement? That is, what you've agreed to and what the government has agreed to? |
| Defendant: | Yes. |
| Court: | Has anyone made any other or different promise or assurance of any kind to you in an effort to induce you to plead guilty in this case? |
| Defendant: | No. |
| Court: | The terms of the plea agreement are recommendations for the Court. The Court can reject the recommendations without permitting you to withdraw you plea of guilty and the Court can impose a sentence that is more severe than you may anticipate. You understand that? |
| Defendant: | Yes. |
| Court: | Has anyone attempted in any way to force you to plead guilty? |
| Defendant: | Yes. |
| Court: | Are you pleading - |
| Defendant: | No, no, no. No. No, no. |
| Court: | All right. Are you pleading guilty of your own free will because in this case you're guilty of the charge that you're pleading guilty to today? |
| Defendant: | Yes. |
| Court: | In the plea agreement, it sets forth a maximum potential sentence that you could receive. Which is a mandatory minimum of ten years imprisonment up to life, a fine of up to four million dollars or both the fine and imprisonment....Do you understand the possible consequences of your plea of guilty? |
| Defendant: | Yes. |
| | .... |
| Court: | Have you discussed with your attorney how the advisory sentencing guidelines- |
| Defendant: | Yes. |
| Court: | - might apply in your case? |
| Defendant: | Yes |
| Court: | The court will not be able to determine your actual sentence until after the presentence report has been completed and you and the government have had an opportunity to challenge the reported facts and the application of the advisory sentencing guidelines. The actual sentence - |
| Defendant: | Yes. |
| Court: | - imposed may be different from any estimate your attorney may have given you. Do you understand that? |
| Defendant: | Yes. |

27  Doc. 103, Plea Hearing, at 6:5-8:19.  The colloquy further negates any claim of promise or

28  understanding that Petitioner would only receive 63 months imprisonment.  "Solemn declarations

6

1  in open court carry a strong presumption of verity." <u>United States v. Rubalcaba</u>, 811 F.2d 491,

2  494 (9th Cir. 1987), quoting <u>United States v. Moore</u>, 599 F.2d 310, 314 (9th Cir. 1979).

3

4  **B. Sentencing Enhancement**

5          In his amended petition, Petitioner claims there was insufficient evidence to support the

6  conclusion that he possessed a firearm in connection with the crime:

7          My sentence was unlawfully based on possession of a firearm during the offense of
           conviction, which precluded application of the safety valve....At sentencing, the Judge
8          made a finding that I possessed a firearm during the offense for which I was convicted.
           Such finding was made contrary to the law of this Circuit. A finding of possession of the
9          firearm required a showing by the Government of actual or constructive possession of the
           firearm. The only showing made at the sentencing hearing was that the firearm was
10         closest in proximity to the passenger side of the vehicle. However, evidence was
           presented indicating that I had driven the vehicle to the Fresno area and was a passenger
11         for a only brief moment. I had no knowledge of the presence of the weapon, and,
           therefore, could not have been in actual or constructive possession of the firearm.
12         Therefore, the finding of possession was based on insufficient facts because actual or
           constructive possession of the firearm was not shown by the Government as required by
13         the law of this Circuit in order to prevent departure from the sentencing guidelines. The
           safety valve should have been applied.
14

15 Doc. 106, Amended Petition, at 4.  "A § 2255 movant procedurally defaults his claims by not

16 raising them on direct appeal and not showing cause and prejudice or actual innocence in

17 response to the default." <u>United States v. Ratigan</u>, 351 F.3d 957, 962 (9th Cir. 2003).  In this

18 case, Petitioner voluntarily dismissed his appeal before filing any appellant brief.  Therefore, he

19 can not be considered to have raised any issued on direct appeal.  Petitioner is alleging neither

20 cause and prejudice nor actual innocence of the crime to which he plead guilty.  The claim is

21 procedurally defaulted.

22         Even if his claims were not defaulted, Petitioner has failed to show a basis for relief.

23  When a firearm is present, "To avoid an enhancement under U.S.S.G. § 2D1.1(b)(1), the burden

24 is on the defendant to prove that it was 'clearly improbable' that he possessed a firearm in

25 connection with the offense. U.S.S.G. § 2D1.1 cmt. 3. To qualify for safety valve relief under

26 U.S.S.G. § 5C1.2, the burden is also on the defendant to prove, but only by a preponderance of

27 the evidence, that he did not possess a firearm in connection with the offense." <u>United States v.</u>

28 <u>Ferryman</u>, 444 F.3d 1183, 1186 (9th Cir. 2006), citations omitted.  Petitioner does not appear to

1   challenge the enhancement under USSG §2D1.1(b)(1) but only the denial of the safety valve

2   under USSG §5C1.2.  The presence of a firearm is undisputed.  Thus, it was his burden to show

3   by a preponderance of the evidence that he did not possess the firearm.  The sentencing

4   guidelines described the burden for the enhancement (not denial of the safety valve) as follows:

5   "The adjustment should be applied if the weapon was present, unless it is clearly improbable that

6   the weapon was connected with the offense. For example, the enhancement would not be applied

7   if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." U.S.

8   Sentencing Commission Guidelines Manual, §2D1.1, comment 3 (Nov. 2005).

9         At the hearing on July 17, 2006, Officer Lowry testified that he found a gun and

10   ammunition in a partially opened bag on the floor of the passenger side seat. Doc. 102,

11   Sentencing Transcript, at 9:23-10:2.  Officer DeLuca testified that Petitioner was sitting in the

12   passenger side seat of the vehicle when he approached. Doc. 102, Sentencing Transcript, at

13   33:12-13.  Petitioner's attorney established through questioning that a police check on the gun

14   showed no record of registration and no information on ownership. Doc. 102, Sentencing

15   Transcript, at 16:10-16.  At the time of actual arrest, Petitioner was outside and moving buckets

16   of pseudoephedrine between the vehicles while the gun remained on the floor of the passenger

17   side seat. Doc. 102, Sentencing Transcript, at 19:16-20:1.  The government also argued as an

18   alternate theory that:

19        Even if, assuming arguendo, that Maldonado-Rivera did not constructively possess the
          firearm or have knowledge of its presence, he is nonetheless vicariously accountable
20        under co-conspirator liability principles for their possession. The Pinkerton rule holds a
          conspirator criminally liable for the substantive offenses committed by a co-conspirator
21        when they are reasonably foreseeable and committed in furtherance of the
          conspiracy....The firearm in this case was used in furtherance of the drug conspiracy
22        chatged. Carrying the firearm was within the scope of the drug conspiracy, because they
          were possessed during and in furtherance of the drug transaction. Maldonado-Rivera
23        could therefore reasonably have foreseen that it was a necessary or natural consequence
          of the drug conspiracy, certainly in a drug transaction of this magnitude, that one of the
24        participants would carry a firearm.

25   Doc. 89, Government's Sentencing Brief, at 7:24-8:16, citations omitted.

26         Based on this evidence, Petitioner did not show by a preponderance of the evidence that

27   he did not possess the gun.  Again, the presence of the gun was undisputed, so the burden was on

28   Petitioner to demonstrate by a preponderance of the evidence that he did not possess the gun in

**8**

connection with the drug deal.  The Ninth Circuit has approved of a USSG §2D1.1(b)(1)

enhancement where "There was evidence, for example, that co-conspirator Henry Willis was

wearing the gun in his waistband such that it was easily seen by the DEA agents; since he met his

wife at the location where the drugs were to be sold, it is reasonable to infer that she [defendant]

saw the gun." United States v. Willis, 899 F.2d 873, 875 (9th Cir. 1990).  As the court earlier

concluded, "the facts in this case indicate that the gun case was not fully zipped up. It was

opened because the case could not be completely closed due to the presence of the ammunition.

It is - I'm fully satisfied that the weapon was certainly clearly visible to Mr. Maldonado Rivera.

He was in a position to be able to see it. I find it hard to believe that something of that size and

that significance would totally escape his knowledge....Separate and apart from that, as a party

involved in this conspiracy involving this amount of money in the circumstances just outlined,

that it reasonable and foreseeable that a firearm or weapon would be present in order to protect

both the individuals and the amount of money involved." Doc. 102, Sentencing Transcript, at

57:7-58:15.


### IV. Order

The petitions of Jose Luis Rivera-Maldonado to vacate, set aside, or correct the sentence

imposed is DENIED and the case is ordered CLOSED.


IT IS SO ORDERED.

**Dated:    July 22, 2008**                    **/s/ Anthony W. Ishii**
                                        CHIEF UNITED STATES DISTRICT JUDGE